255 N.W.2d 258 (1977)
198 Neb. 697
HOUSE OFFICERS ASSOCIATION FOR the UNIVERSITY OF NEBRASKA MEDICAL CENTER AND AFFILIATED HOSPITALS, Appellee,
v.
UNIVERSITY OF NEBRASKA MEDICAL CENTER, Appellee, Impleaded with Board of Regents, University of Nebraska, Appellant, Impleaded with University of Nebraska and State of Nebraska, Appellees.
Nos. 40912, 41040.
Supreme Court of Nebraska.
June 22, 1977.
*259 David R. Buntain and Cline, Williams, Wright, Johnson & Oldfather, Lincoln, for appellant.
Maynard H. Weinberg, of Weinberg & Weinberg, Omaha, for appellee.
Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, BRODKEY and WHITE, JJ., and KUNS, Retired District Judge.
C. THOMAS WHITE, Justice.
These are appeals by the Board of Regents of the University of Nebraska from a determination of the Court of Industrial Relations that the interns and residents of the University of Nebraska Medical Center, known as House Officers, are employees of the State of Nebraska under the provisions of Chapter 48, article 8, R.R.S.1943, and from a further determination of the Court of Industrial Relations that a unit composed solely of House Officers employed by the University of Nebraska Medical Center is an appropriate "unit" within the meaning of section 48-838, R.S.Supp., 1976. The Board of Regents appeals.
The errors assigned are the Court of Industrial Relations erred in holding: (1) That the House Officers were employees and not students as contended by the Board of Regents; and (2) that a unit consisting solely of House Officers is an appropriate unit under section 48-838, R.S.Supp., 1976. We shall consider these assignments of error in order.
The term "House Officer" is used in post-graduate medical programs associated with the University of Nebraska College of Medicine and is used to cover the former terms "intern" and "resident." House Officers are essentially physicians who are engaged in postgraduate medical education. While formerly one who had obtained the degree of Doctor of Medicine was required to serve a 1-year period called "internship" before *260 being licensed to practice his profession in this state, this is no longer the case. Now a graduate medical doctor, upon passing the tests administered by the state licensing agency, acquires a license which authorizes him or her to practice the profession of medicine and surgery in any location in the state. Under the former practice, a first-year postgraduate medical doctor was called an "intern" and those postgraduate medical doctors engaged in various specialty programs after that internship were known as "residents." Now all postgraduate medical doctors are designated "House Officers" or "H.O." The positions as House Officers in various teaching facilities throughout the United States are determined by a national computer-matching program where the candidates for medical degrees indicate their preferences and the hospitals or teaching facilities grade the applicants according to their needs and openings. The results are announced simultaneously nationwide. At the start of postgraduate training, each House Officer is offered a contract. A salary is established which increases from year-to-year during the course of the House Officer's service. The normal stay for a House Officer ranges from 3 years to as long as 5 years. The House Officer program is not aimed at any postgraduate degree. It is either first, as found by the Court of Industrial Relations, "the desire of the individual to acquire additional or more refined skills in order to engage in a limited area of practice demanding those skills, and secondly, the demand by national certification bodies in the medical profession that a program of this kind be completed as a condition precedent to eligibility to take that body's certification examination with a view toward becoming a recognized specialist in a limited field of medical practice." All graduate medical programs at the University of Nebraska Medical Center are governed by the "Essentials of Approved Internship" and the "Essentials of an Approved Residency" adopted by the House of Delegates of the American Medical Association. Each of the 17 House Officer programs of the Medical Center is evaluated approximately every 3 years by residency review committees and the Liaison Committee on Graduate Medical Education, a group representing the American Board of Medical Specialties, the American Hospital Association, the American Medical Association, the Association of Medical Colleges, and the Council of Medical Specialty Societies. Thus, the essentials of the graduate medical training program are only indirectly governed by the Medical Center itself but are also governed in conjunction with the specialty bodies. The programs are required to meet the requirements of outside accrediting agencies so that the persons completing the program will be deemed qualified to take the examination leading to certification in their particular specialty. The House Officer training is taken either at the University Hospital, a part of the Medical Center, or at various other affiliated hospitals. All paychecks are made through the Medical Center except for service at the Veterans' Hospitals, federal institutions, in which case the House Officer is paid directly from federal funds.
The evidence indicates that the House Officers regularly work extremely long hours. Weekly workloads of 80 to 100 hours are not unusual. The evidence indicates that the House Officers perform 50 percent or more of their functions in primary medical care and in some cases as high as 80 to 90 percent in primary medical care. Depending on the length of time in the program, the House Officers perform operations without staff men being present, write prescriptions without supervision, run out-patient clinics with minimum supervision, and write in-patient orders that are not subject to review before being carried out. The full-time staff men who are running the specialty department have their own patient load but are available, if asked, to provide support in difficult cases. While the University Hospital is a teaching hospital and generally is a referral hospital handling the highest level of cases, the House Officers are the sole in-house physicians at night and in the emergency room. The full-time staff is on call when needed but *261 for the most part do not perform night or emergency functions.
In its Bylaws, the University of Nebraska Boards of Regents defines six classifications of employees.
The employees in these categories are further designated as either "A" line, "B" line, or "C" line individuals. "A" line employees are those individuals holding the position as Professional Staff, Academic-Administrative Staff, or Other Academic Staff; "B" line personnel are individuals who hold Managerial-Professional Staff positions; and "C" line personnel are individuals who are Office and Service Staff. The House Officers are considered "Other Academic Staff" by the University Administration and are thus "A" line employees. The purpose of the House Officer program is obviously two-fold, the advanced training in the specialty of the medical graduate and, in return, the providing to the University Medical Center a considerable degree of service for which the House Officer is compensated. The House Officers pay federal and state income tax on their salaries. There is no exclusion under the Internal Revenue Code for stipends to students. They pay Social Security. Workmen's compensation is provided as is a free basic family health plan, a retirement plan, and 20 days of vacation. House Officers receive an employee booklet and an employee I.D. card, and are referred to as "Other Academic Staff" in their contracts which they are required to sign individually. The obvious conclusion from the recitation of facts is that the House Officers are both students and employees of the University of Nebraska. The appellant urges us to accept the rationale of Cedars-Sinai Medical Center, 223 N.L.R.B. No. 57, 91 L.R.R.M. 1398 (1976). That case held that for the purpose of the National Labor Relations Act, specifically Title 29 U.S.C. 152, the House Officers of a private nonprofit hospital were not employees entitled to form a bargaining unit. In that case the Board stated: "(The house staff participates) in these programs not for the purpose of earning a living; instead they are there to pursue the graduate medical education that is a requirement for the practice of medicine. An internship is a requirement for the examination for licensing and residency and fellowship programs are necessary to qualify for certification in specialties and subspecialties. While the house staff spends a great percentage of their time in direct patient care, this is simply the means by which the learning process is carried out. It is only through this direct involvement with patients that the graduate medical student is able to acquire the necessary diagnostic skills and experience to practice his profession. * * These programs themselves were designed not for the purpose of meeting the hospital's staffing requirements, but rather to allow the students to develop in a hospital setting, the clinical judgment and the proficiency in clinical skills necessary to the practice of medicine in the area of his choice."
In City of Grand Island v. American Federation of S. C. & M. Employees, 186 Neb. 711, 185 N.W.2d 860 (1971), we said that the decisions under the National Labor Relations Act were helpful but not controlling upon this court or the Court of Industrial Relations.
The great weight of authority in state courts has come to a contrary decision to the Cedars-Sinai case. See, Regents of University of Michigan v. Employment Relations Commission, 389 Mich. 96, 204 N.W.2d 218 (1973); Albert Einstein College of Medicine of Yeshiva University & Committee of Interns & Residents of New York City, 33 S.L.R.B. No. 86 (N.Y., 1970); Bronx Eye Infirmary, Inc. & House Staff Assn. of the Bronx Eye Infirmary, Inc., 33 S.L.R.B. 245 (N.Y., 1970); Brooklyn Eye & Ear Hospital & House Staff Assn. of Brooklyn Eye & Ear Hospital, 32 S.L.R.B. 65 (N.Y.,1968); The Long Island College Hospital & House Staff Assn. of the Long Island College Hospital, 33 S.L.R.B. 161 (N.Y., 1970); Matter of Wycoff Heights Hospital & House Staff Assn. of Wycoff Heights Hospital, New York State Labor Relations Board Case No. SE 45100 (1971); Worcester City Hospital & Worcester City Hospital Physicians House *262 Staff Assn., Case No. M.C.R.-2349 (Mass., 1976); City of Cambridge & Cambridge Hospital House Officers Assn., 2 M.L.C. 1450 (Mass., 1976). In Regents of University of Michigan v. Employment Relations Commission, supra, it was said: "Interns, residents and post-doctoral fellows are both students and employees. The fact that they are continually acquiring new skills does not detract from the findings of the MERC that they may organize as employees under the provisions of PERA. Members of all professions continue their learning throughout their careers. For example, fledgling lawyers employed by a law firm spend a great deal of time acquiring new skills, yet no one would contend that they are not employees of the law firm."
Section 48-801, R.R.S.1943, states: "Employee shall include any person employed by any employer as defined in sections 48-801 to 48-823." The section provides the employer shall mean "the State of Nebraska or any political or governmental subdivision of the State of Nebraska, except the Nebraska National Guard or state militia, any municipal corporation, or any public power district or public power and irrigation district." We find nothing in the stated purpose of the act that would indicate that the Legislature intended that persons who are students but also employees of the University of Nebraska should be exempted from the provisions of the act. We hold that the House Officers are employees within the meaning of the act and are entitled to participate in an appropriate bargaining unit.
The appellant next contends that the Court of Industrial Relations erred in its determination of a correct bargaining unit. In its memorandum opinion, the CIR rejected a claim that the appropriate unit would include all "A" line and "B" line personnel. The CIR concluded: "That group would include a vast number of professors, lower level administrators, professional staff, managerial staff, extension agents, graduate assistants, etc. Such an all-encompassing unit was rejected by us in A.A.U.P. v. Board of Regents, 3 C.I.R. 71. In that case we held appropriate a unit consisting of all `A line' employees at UNL, except the faculties of the colleges of dentistry and law. Each of those latter faculties was held to be an appropriate unit. In the present case, the record even more strongly supports a finding of a complete lack of a community of interest between the House Officers and other University employees. The closest to them would be graduate students who are serving as teaching assistants, research assistants, etc. * * * The record indicates that there is little, if any, contact between the House Officers and those graduate students."
Any determination of an appropriate bargaining unit must be made in light of our decision in American Assn. of University Professors v. Board of Regents, 198 Neb. 243, 253 N.W.2d 1 (1977). We there affirmed the ruling of the CIR that the "A" line employees of UN-L, except those at the Colleges of Law and Dentistry, were an appropriate bargaining unit. Central to that holding were three decisions: First, the UN-L faculty could form a separate bargaining unit from the UN-O faculty; second, the faculty of the College of Law and of the College of Dentistry could each have their own bargaining unit; and third, the "A" line employees should be separate from the "B" and "C" line employees of the University.
The structure of the University system must again be reviewed. The University of Nebraska is a constitutionally created state-wide University with its general government vested in The Board of Regents of the University of Nebraska. The Board, pursuant to legislative authority, has established a separate central branch for the administration of the University as a whole. This central branch, entitled Central Administration, is headed by the President of the University. The Central Administration has and exercises direction and control over the entire University system subject only to the control and direction of the Board.
The University is divided into three major administrative units, each of which has *263 its own administrative staff headed by a Chancellor. These units are the University of Nebraska at Omaha, the University of Nebraska at Lincoln, and the University of Nebraska Medical School. Each of the three units is further divided into colleges, schools, and departments.
The Medical Center consists of seven major components: College of Medicine; College of Nursing; College of Pharmacy; Nebraska Psychiatric Institute; C. Louis Meyer Children's Rehabilitation Institute; Eugene C. Eppley Institute for Research in Cancer and Allied Diseases; and the University Hospital and Clinics.
The Medical Center, through the College of Medicine and the University Hospital and Clinics, offers 17 internship and residence programs. The responsibility for these programs rests with the Dean of the College of Medicine, who also serves as the Medical Director of the University Hospital and Clinics. The physicians who are appointed to these programs are the "House Officers" of whom we are concerned.
We have noted that House Officers are classified as "Other Academic Staff" by the University and are "A" line employees. Teaching assistants, research assistants, graduate assistants, and teaching fellows are also considered to be "Other Academic Staff" and are "A" line employees.
In American Assn. of University Professors v. Board of Regents, supra, we concluded that "a separate bargaining unit for UN-L faculty is appropriate." The Board there argued that UN-O faculty should be included with the UN-L faculty in a bargaining unit. As a necessary corollary of that case then the UN-L faculty should not be included in a bargaining unit with the "A" line employees at the Medical Center. We now hold that the "A" line employees at the Medical Center have a sufficient community of interest separate from the faculty of UN-O which warrants a separate unit.
Section 48-838(1), R.S.Supp., 1976, reads, in part, as follows: "The court shall determine questions of representation for purposes of collective bargaining for and on behalf of employees * * *." In subsection (2) of that section, it is provided: "It shall be presumed, in the case of governmental subdivisions such as municipalities, counties, power districts, or utility districts with no previous history of collective bargaining, that units of employees of less than departmental size shall not be appropriate."
In American Assn. of University Professors v. Board of Regents, supra, we stated: "It is clear that in enacting subsection (2) of section 48-838, the Legislature properly sought to avoid undue fragmentation of bargaining units." Although rejecting the argument that separate bargaining units for each major administrative unit would result in over-fragmentation, the majority opinion did note that there is a danger of "whipsaw" tactics and unnecessary bureaucracy when too many units are allowed. The dissent noted that "fragmentation leads directly to development of expensive and administratively unmanageable bargaining structures and to increased administrative costs once an agreement is reached. It fosters proliferation of personnel necessary to bargain and administer contracts on both sides of the bargaining table. It destroys the ability of public institutions such as the University to develop, administer, and maintain any semblance of uniformity or coordination in their employment policies and practices." Clearly, it is the intent of the Legislature and the policy of this court that fragmentation of bargaining units within the public sector is to be avoided.
The review by this court of orders and decisions of the Court of Industrial Relations is restricted to considering whether the order is supported by substantial evidence justifying the order or decision made, whether it acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable. American Assn. of University Professors v. Board of Regents, supra.
In American Assn. of University Professors v. Board of Regents, supra, we considered *264 appropriate a bargaining unit of "A" line employees of an individual professional college within one of the three major administrative units of the University. In the current case, the Court of Industrial Relations has allowed the fragmentation of "A" line employees into separate bargaining units within an individual professional college. This is a step further than what was allowed in American Assn. of University Professors v. Board of Regents, supra.
The Court of Industrial Relations found that there was "a complete lack of a community of interest between the House Officers and other University employees." An examination of the record reveals little, if any, evidence concerning the relationship between the House Officers and other "A" line employees of the Medical Center, other than graduate students. We, therefore, hold that the decision of the CIR in separating House Officers from "A" line employees of the Medical Center, other than graduate students, is not supported by substantial evidence. We further find the order of the CIR to be in possible contradiction of the statutory dictate to avoid undue fragmentation.
The Court of Industrial Relations found that the House Officers should have a separate bargaining unit from graduate students. In reviewing this determination, we find substantial evidence to support the order. Dr. Sparks, Chancellor of the University of Nebraska Medical Center, testified at length as to the duties and positions of the graduate students employed at the Medical Center. He stated that a graduate assistant is selected from a group of students enrolled in formal educational programs leading towards a Master's or Doctorate degree. The graduate assistant may be offered the opportunity to supervise in a laboratory or teach a part of a course, duties for which the student receives a stipend on a partial-pay basis. Although graduate assistants use the same library and laboratory facilities as do the House Officers, they only participate in seminars with the House Officers to a limited degree. Dr. Sparks further testified that the graduate students are paid a lower salary for the services than House Officers and usually work only part-time. In fact, Dr. Sparks admitted that the graduate students at the Medical Center generally performed duties and functions similar to graduate students within the University system in general. It is clear that the House Officers have a community of interest separate from the graduate students and assistants to warrant the separation of the graduate students and assistants from the House Officers for purposes of collective bargaining.
The ruling of the Court of Industrial Relations is affirmed in part, and in part reversed and remanded for further proceedings.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.
SPENCER, Justice, dissenting in part and concurring in part.
I respectfully dissent from the majority opinion because I believe the House Officers of the University of Nebraska Medical Center and Affiliated Hospitals are not employees entitled to form a bargaining unit. I am in full agreement with the rationale of Cedars-Sinai Medical Center, 223 N.L.R.B. No. 57, 91 L.R.R.M. 1398 (1976).
I further dissent for the reasons set out in my dissent in American Assn. of University Professors v. Board of Regents, 198 Neb. 243, 253 N.W.2d 1. I have particular reference to my discussion relative to the fragmentation of bargaining units among public employees of the State of Nebraska as being contrary to the public policy of our state labor law as set forth in the provisions of section 48-802, R.R.S. 1943.
I concur with the portion of the majority opinion reversing the portion of the order by the Court of Industrial Relations separating House Officers from "A" line employees of the Medical Center other than graduate students. For reasons expressed in my other dissent, I cannot agree that the House Officers should have a separate bargaining unit from other employees.