SHELDON STATION EMPLOYEES ASSOCIATION, APPELLEE,
v. NEBRASKA PUBLIC POWER DISTRICT, APPELLANT.
275 N. W. 2d 816

Filed February 27, 1979. No. 41801.

Barlow, Johnson, DeMars & Flodman, for appellant.

Baylor, Evnen, Baylor, Curtiss & Grimit, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and SPENCER, Retired Justice.

KRIVOSHA, C. J.

Various employees of the Nebraska Public Power District (District) employed at the District's Sheldon Station, Hallam, Nebraska, petitioned the Nebraska Court of Industrial Relations (CIR) to declare all persons, except supervisors, employed by the District at the Sheldon Station, Hallam, Nebraska, and compensated at an hourly wage, as the appropriate unit for purposes of exclusive representation and bargaining with the District pursuant to the provisions of sections 48-801 to 48-838, R. R. S. 1943, as amended.

The District answered denying the proposed group was the appropriate unit. After trial the CIR entered its order finding in favor of the appellee and authorizing the creation of an exclusive bargaining

unit consisting of all hourly wage nonmanagement personnel employed by the District at the Sheldon Station, Hallam, Nebraska.

As required by law, we have examined this matter on appeal to determine whether the order of the CIR is supported by substantial evidence. House Officers Assn. v. University of Nebraska Medical Center, 198 Neb. 697, 255 N. W. 2d 258. Upon review of the record, we find that the decision of the CIR is not supported by substantial evidence and accordingly must be reversed.

The District is a governmental subdivision created pursuant to the provisions of section 70-601, R. R. S. 1943, for the purpose of supplying electricity in Nebraska, both at wholesale and at retail. The District is a vertically integrated public power system having generating, transmission, and distribution facilities. Its general offices are located in Columbus, Nebraska, although the District operates generating facilities at some eight locations throughout the state. The specific facility in question is located at Hallam, Nebraska, and is identified by the District as the "Sheldon Station."

All matters of general administration are handled at the general office including personnel, finances, and labor relations. Although there is evidence indicating individual stations were authorized to initiate employment applications and interview prospective employees, the final decision concerning hiring was made by the personnel office in Columbus. While it is true that the recommendation of the local unit is given great weight and rarely ignored, the responsibility for making the final decision nevertheless is in the general office at Columbus, Nebraska.

All adjustments of employee benefits, salaries, or job descriptions are made on a statewide basis. Such items are set out in an employee manual prepared by the general office for use by all employees of the District, regardless of their specific location. In ad-

dition, the evidence discloses that executive orders are issued by the central office from time to time, establishing new personnel policies applicable to all employees regardless of their place of employment.

While the record does not disclose the total number of persons employed by the District, the record does disclose that there were, at the time this matter was before the CIR, at least 328 employees at eight specific generating locations. Employees ranged in number from as many as 101 at the "Cooper Nuclear Station" to as few as 6 at the "Spencer Hydro Station," with 77 being employed by the District at the "Sheldon Station."

The record further discloses that the District instituted what it called "employee committees" to allow an interchange of information at the various power plants themselves. Certain of the smaller power plants were assigned to regional employee committees. It appears that the purpose of the meetings was to permit management to "meet and confer" with the employees of the District to discuss matters of mutual interest. None of the meetings have been for the purpose of negotiating wages or other terms and conditions of employment. The record indicates the topics discussed at these meetings did, to some extent, pertain to the District's policy with regard to both wages and terms and conditions of employment. In each instance, however, the meetings were for the purpose of exchanging ideas and not for the purpose of negotiations. As a matter of fact, the record discloses that on July 25, 1977, representatives of the District came to a meeting of the Sheldon Station employees committee, believing the purpose of the meeting to be similar to those that had been held in the past, namely, to meet and to confer concerning various matters involving the operation of the station and the employees. When the management representatives arrived, they were advised by the employees committee and an attor-

ney retained by the committee, that the purpose of the meeting was to recognize the employees committee as the exclusive bargaining agent for negotiating purposes. Representatives of the District refused to remain at the meeting and thereafter left.

There is no evidence in the record to indicate the District at any time created or recognized any employees committee as an exclusive bargaining agent, nor ever met with them for the purpose of "negotiating" terms and conditions of employment. The units were simply in-house committees created by a public employer for the purpose of exchanging ideas and discussing with the employees any problems which they were experiencing. It would appear that because of the geographic locations of the various stations, it was more convenient for the employees to have several representatives of the central office travel about the state and meet with various employee committees, rather than have all the employees congregate for a meeting at a central location. Nevertheless, employee grievances were required to be taken back to the central management of the District and discussed. If an adjustment was to be made, it had to be approved by the board of directors of the District and then applied to all employees in the District and not just to a particular station.

In its order dated November 1, 1977, the CIR declared "it is settled law that in tailoring the appropriate unit, we consider the mutuality of interest in wages, hours and working conditions (community of interest), duties and skills of employees, extent of union organization among employees, desires of the employees, a policy against fragmentation of units, the established policies of the employer, and the statutory mandate to assure proper functioning and operation of governmental service."

While it is true these factors are to be considered, it is likewise true that they are not the only factors to

be considered, nor must each such factor be given equal weight. The factors appropriate to a bargaining unit consideration and the weight to be given each such factor must vary from case to case depending upon its particular applicability in each case. City of Grand Island v. American Federation of S. C. & M. Employees, 186 Neb. 711, 185 N. W. 2d 860; American Assn. of University Professors v. Board of Regents, 198 Neb. 243, 253 N. W. 2d 1.

Likewise, in reviewing factors such as "established policies of the employer," "fragmentation," and "degree of unionization-desires of employees," we must keep in mind the clear dictates of the statutes. These factors must be examined in light of the statutory presumption contained in section 48-838 (2), R. S. Supp., 1976, which provides as follows: " * * * It shall be presumed, in the case of governmental subdivisions such as municipalities, counties, power districts, or utilities districts with no previous history of collective bargaining, that units of employees of less than departmental size shall not be appropriate."

In interpreting that section, we have previously said: " 'It is clear that in enacting subsection (2) of section 48-838, the Legislature properly sought to avoid *undue* fragmentation of the bargaining units. * * * It (undue fragmentation) fosters proliferation of personnel necessary to bargain and administer contracts on both sides of the bargaining table. It destroys the ability of public institutions * * * to develop, administer, and maintain any semblance of uniformity or coordination in their employment policies and practices.' " House Officers Assn. v. University of Nebraska Medical Center, 198 Neb. 697, 255 N. W. 2d 258. Clearly, it is the intent of the Legislature that fragmentation of bargaining units within the public sector is to be avoided. A reading of the CIR's findings, with regard to these various factors noted by the CIR and applied to the particular case, lead to the conclusion that the order creat-

ing an exclusive bargaining unit at the Sheldon Station cannot be sustained.

In its order, the CIR made specific findings with regard to the various relevant factors to be considered. We now examine each of those findings.

The CIR found that with regard to centralization of management and labor policy, "Personnel actions are generally initiated at the local level, but are forwarded to Columbus for final approval by management and the Board of Directors." This would indicate that there is in fact centralization of management. The mere fact that a multilocation employer permits employment applications or initial interviews to be made at each site, subject to central office approval, does not in itself establish that each location has employment autonomy. In light of the fact that the CIR found the central office retained final approval for hiring, no matter how perfunctory, and that all personnel policies emanated from the central office, which policies applied equally to all employees regardless of location, we must find this factor in the District's favor.

With regard to the extent of interchange of employees, the CIR found "* * * while precise duties at each plant for a given job description may vary, that the duties are sufficiently similar, that an employee in a given description could function satisfactorily in the same job description at another plant with a minimum of training." The evidence indicated that 26.9 percent of transfers, including promotions, are from plant to plant. It would appear from the evidence, however, that this is due in large part to the fact that a person at a particular site is trained in advance for promotion at that site and not by reason of some uniqueness of the particular plant. Again this finding of the CIR would appear to require our finding this factor in the District's favor.

With regard to similarity of skills, the CIR found that there was great similarity between the various

plants. The CIR's order did note that there were differences arising from the fact that the Cooper Station is nuclear, and often has higher compensation levels for the same job title. The evidence discloses this difference is due to the facts that the Cooper Station is a nuclear station and its employees require higher training and skill. Nevertheless, all of the employees continue to operate within an overall statewide policy plan and individuals at the same level of job classification are paid the same wage throughout the District. On that basis, this factor must be found in the District's favor.

As to the factor of geographical location, the CIR found the plants and the transmission and distribution facilities, while scattered across the State of Nebraska from the eastern to the western border and from South Dakota to Kansas, are interlocked with each other. The entire transmission system is dispatched out of the facility at Hastings, Nebraska. The factor of geographical location must be found in the District's favor.

With regard to uniformity of wages, benefits, and working conditions, the CIR found "The District has attempted to equalize wages and benefits by setting up a district-wide compensation plan." While it may be true that the employees of the Sheldon Station do not perceive the plan as uniform, there is no evidence to indicate that wages and benefits are not uniform throughout the District for the same level of skills. As noted earlier, due to certain requirements imposed by a regulatory agency, personnel at the Cooper Station have additional training. As a result, they are sometimes paid at a higher wage level than another individual at a different plant performing similar work. Generally, however, within the same job classification, individuals at the same level are paid the same throughout the District. The factor of uniformity of wages, benefits, and working conditions must also be found in the District's favor.

With regard to current governance of the District, the CIR found "The District has ostensibly set up a highly centralized management. However, it is clear from the evidence that day-to-day decisions on personnel matters are left largely to the local managers." While it may be true that local supervisors have certain day-to-day control, it must be kept in mind this is a public employer and not a private employer. The governance of the District must be established by law and not by the acts of its employees. The responsibility for the operation of the District lies with the board of directors and those individuals to whom authority has been delegated by the board. The record does not justify a conclusion that local managers retain such authority concerning personnel matters whereby it can be said the current governance of the District is vested in each individual plant. This factor, likewise, must be found in the District's favor.

As to the factor of established policy of the employer, the CIR found in its order: "The District, after demand for recognition by the plaintiff, announced that it felt only a district-wide bargaining unit was appropriate. We have previously noted its establishment of local committees, however." While the specific order does not indicate to us how the CIR viewed that factor, it would appear the CIR believed that the public employer had, by reason of establishing local committees, thereby established a policy of recognizing individual units for purposes of exclusive bargaining. The action of the public employer in that regard, however, does not lead to the conclusion reached by the CIR. We do not believe the establishment by the employer of local employee committees justifies the conclusion that the employer has established a policy of creating individual groups for collective bargaining purposes. Before the statutory restrictions against undue fragmentation in the public employment area prescribed

by section 48-838 (2), R. S. Supp., 1976, can be overcome, there must be strong evidence justifying the need and propriety of such additional division.

The mere fact that a public employer voluntarily creates employee committees, for the purpose of meeting and conferring about matters of mutual interest between the public employer and the public employees, does not establish that the public employer has recognized such units as the exclusive collective bargaining agent. Whatever may be the rule in the private sector because of provisions of the National Labor Relations Act, that rule has no application in the public sector. To hold otherwise would be to discourage, if not chill, the public employer's desire to meet and confer with the employees in an open and meaningful interchange of information as was done in the instant case. Such a result cannot possibly be in the best interests of either the public employer or the public employees and certainly is not in the best interests of the public who in the final analysis is the employer of both. We find that the evidence in this case does not meet the requirement to overcome the presumption against undue fragmentation and this factor, likewise, must be found to be in the District's favor.

With regard to the specific factor of fragmentation, we believe what we have said with regard to established policies of the employer likewise applies to this factor. In two recent cases we rejected the employees' desire for fragmentation holding that such units were inappropriate. See American Fed. of S., C. & M. Emp. v. State, 200 Neb. 171, 263 N. W. 2d 643; House Officers Assn. v. University of Nebraska Medical Center, *supra*.

A reading of recent decisions of the CIR would likewise lead one to the conclusion that the unit requested in this case would clearly fall within the prohibition against undue fragmentation. In the case of Retail and Prof. Employees, Local 1015 v. Kearney

Center, 3 CIR 400, the CIR denied the petition of the union, requesting the CIR to find that all persons employed at the Youth Development Center at Kearney, Nebraska, except supervisory employees, constituted an appropriate bargaining unit within the Department of Correctional Services. While the CIR attempted to distinguish that case from the instant case, such distinction fails.

Likewise, in the case of International Brotherhood of Electrical Workers v. State, 3 CIR 23, the CIR denied the request by the IBEW for the creation of two units, one consisting principally of production personnel and the other of engineering personnel. In doing so, the CIR there said: "The public policy provisions of the Court of Industrial Relations Act (Section 48-802) require this Court to insure the continuous operational efficiency of governmental services. Fragmented units interfere with the continuous operational efficiency of governmental services and should, therefore, be avoided to the extent that it is possible consistent with the preservation of the rights of public sector employees to engage in collective bargaining * * *.

"We conclude that the limited units requested by Petitioner herein are not appropriate. We base our decision on the public policy against fragmented units, the object and purpose of LB 1228 to avoid fragmented units, application of the specific statutory criteria of Section 48-838, and application of the criteria established by the Nebraska Supreme Court in the City of Grand Island case, *supra*."

The logic of the IBEW decision, *supra*, as expressed by the CIR, would appear to apply with equal validity to the case now before us, and we must, therefore, on the issue of "fragmentation," find in the District's favor.

The last remaining factor for consideration is the degree of unionization, the desires of employees. The CIR found "The only organizational effort cur-

rently under way is the one now before this Court. There is no evidence of any other present organizational activity among any of the defendant's employees." We are unable to see how this finding could in any manner justify the creation of a separate unit at the Sheldon Station.

The desires of a group of employees standing alone may be of importance to the employer in the manner in which the employer reacts to the employees, but cannot be of legal significance. The statutes clearly provide that before the court can even order an election, it must determine that at least 30 percent of the employees in an appropriate unit have requested in writing that it hold such an election. The CIR may only certify an exclusive bargaining unit if the majority of the employees voting in the requested election vote for the proposed agent. § 48-838, R. S. Supp., 1976. The question, therefore, is not whether some employee at some particular location desires exclusive representation, but whether at least 30 percent of an appropriate unit have properly evidenced that desire. The CIR in its finding in no way gives any indication how or in what manner the desires of the employees of the Sheldon Station were of legal significance in determining the appropriateness of the unit. If an appropriate unit can be fashioned by simply encompassing those who evidence a desire, then the entire dictates of section 48-838, R. S. Supp., 1976, can be effectively defeated. It must be kept in mind that under the provisions of our public law, employees have not only a right to organize and be represented, but likewise have a right not to be organized and be represented. § 48-837, R. R. S. 1943. If both of these prevailing rights are to be maintained in proper balance, then the requirements of section 48-838, R. S. Supp., 1976, with regard to appropriate units, must likewise be maintained in balance.

If the rationale of the CIR is correct with regard to the Sheldon Station, then of necessity this court would be compelled to recognize, as an appropriate bargaining unit, the Scottsbluff Station with 28 employees, the Ogallala Station with 15 employees, the North Platte Station with 7 employees, and the Spencer Station with 6 employees. We cannot believe that such a decision would be in keeping with the dictates of the law nor with the intent of the Legislature to prevent undue fragmentation. Adding the factors in their various columns, we find that there are no factors which can be found in favor of recognizing the Sheldon Station as an appropriate unit, and that, therefore, the order of the CIR is not sustained by substantial evidence. We therefore reverse the order of the CIR with directions to dismiss the petition of the Sheldon Station Employees Association.

REVERSED AND REMANDED WITH DIRECTIONS.

BOSLAUGH and BRODKEY, JJ., concur in result.