PAPILLION/LAVISTA SCHOOLS PRINCIPALS AND SUPERVISORS ORGANIZATION (PLPSO), APPELLEE, V. PAPILLION/LAVISTA SCHOOL DISTRICT, SCHOOL DISTRICT NO. 27, APPELLANT.

555 N.W.2d 563

Filed November 12, 1996.    No. A-95-621.

Kelley Baker and Jerry L. Pigsley, of Harding & Ogborn, for appellant.

Robert E. O'Connor, Jr., for appellee.

MILLER-LERMAN, Chief Judge, and HANNON and MUES, Judges.

MILLER-LERMAN, Chief Judge.

Papillion/LaVista School District, School District No. 27 (District), appeals the April 18, 1995, "Findings and Order" of the Nebraska Commission of Industrial Relations (CIR), which determined that the bargaining unit generally described as the Papillion/LaVista Schools Principals and Supervisors Organization (PLPSO) was the appropriate bargaining unit for representation election purposes for certain employees of the District. For the reasons recited below, we affirm.

## BACKGROUND AND FACTS

The PLPSO filed a petition with the CIR on September 28, 1994, requesting, inter alia, that the PLPSO be certified as the appropriate bargaining unit for employees in the unit. The PLPSO produced 23 out of a potential 26 or 27 authorization cards of members of the proposed bargaining unit authorizing the PLPSO to represent them.

Following the filing of an answer denying the allegations in the petition, a hearing was conducted on January 25, 1995, at which five witnesses testified and 23 exhibits were received in evidence. The witnesses in favor of the PLPSO as the appropriate bargaining unit were an elementary school principal, a high

school assistant principal, and a junior high school principal. The witnesses called by the District were the assistant superintendent for personnel of the District and the superintendent of the District. The exhibits included the "Constitution and By Laws" of the PLPSO, an administrator salary schedule, an organizational chart, a list of central office administrators, numerous job descriptions, administrator evaluation and evaluation indicator forms, an administrator performance appraisal, a list of administrators, and a letter dated March 2, 1994, from the president of the board of education to the president of the PLPSO regarding proceeding with 1994-95 salary discussions.

On April 18, 1995, findings were made by the CIR. As to some of these findings, the District either disputes their accuracy or challenges their legal significance. The following findings were made by the CIR: The PLPSO is composed of principals, assistant principals, and directors of programs in the District. The PLPSO has been organized since at least 1982. There was a predecessor organization to the PLPSO. The predecessor organization adopted bylaws in the early 1970's. The PLPSO or its predecessor "has existed for over twenty years." The PLPSO "worked through the central office administration, and on occasion even met directly with the Board, to negotiate informally wages, salary schedules, length of contracts, and other working conditions."

The CIR decision listed the job titles of the members of the proposed bargaining unit, the majority of whom were principals or assistant principals. The CIR order noted that the PLPSO and the District "stipulated that all of these employees have supervisory duties to varying degrees. All of these supervisory employees are state certified administrators and have at least a Master's Degree."

The CIR found that the individuals in the group use a " 'team approach' " to administrative duties and that the power in the group is diffused in a "collegial educational environment." The CIR defined the central office administration as generally composed of the superintendent and assistant superintendents of varying descriptions.

The CIR found as follows:

All school principals and the Library/Media Coordinator report to the Superintendent of Schools through the Assistant Superintendent of Personnel. The assistant principals report to their respective school principals. The Director of Special Services and the Challenge Coordinator report to the Assistant Superintendent for Curriculum and Instruction. The Special Services Coordinator and the English as a Second Language Project Director report to the Director of Special Services. The Director of Business Operations reports to the Assistant Superintendent for Business Services.

Performance evaluations are generally conducted on the supervisory employees by the person to whom they report. Principals are required to conduct performance evaluations on their respective assistant school principals. These evaluations may contain recommendations with respect to continued employment. These evaluations will also be used in the future as one of three equally weighted components for the distribution of merit pay.

None of the supervisory employees for at least the past six years has been recommended for termination of employment. Decisions on employment continuation or termination are ultimately made by the Board. Although principals have general supervisory authority over assistant principals, the collaborative team approach is used. The principals do not generally supervise the day-to-day work of their assistant principals. Instead, the assistant principals generally confer with, and report to, the principals with respect to specific problems that arise. The principals do not "micro manage" their assistant principals, and to that extent, the assistant principals are autonomous. Depending on the issue, the assistant principals sometimes interact directly with the assistant superintendents.

The CIR evaluated the legal significance of the foregoing findings vis-a-vis the following factors: mutuality of interest in wages, hours, and working conditions among PLPSO members; duties and skills of employees within the PLPSO; extent of union organization and desires of employees in the PLPSO;

established policies of the employer; and the policy against undue fragmentation of units in public employment.

The CIR concluded that the appropriate supervisory employee bargaining unit should be as follows:

> All school principals, and assistant school principals, the Director of Special Services, the Special Services Coordinator, the English as a Second Language Project Director, the Challenge Coordinator, the Library/Media Coordinator, and the Director of Business Operations, all employed by the Papillion/LaVista School District, School District No. 27.

In designating the foregoing as the appropriate bargaining unit, the CIR noted that the Legislature has provided that supervisors may organize with other supervisors for purposes of collective bargaining pursuant to Neb. Rev. Stat. § 48-816(3)(a) (Reissue 1993). In this regard, the CIR stated that the

> Nebraska Legislature has even provided statutory presumptions that certain firefighter and police officer supervisors shall have a community of interest with other firefighter and police officer employees, and that school administrators employed in a Class V school district shall have a community of interest with teachers and other certificated employees for purposes of joining a single bargaining unit. Neb. Rev. Stat. § 48-816(3)(b) and (c) (1993).

The CIR decision continues:

> If the Legislature does not believe that public sector supervisors having a community of interest should have a right to organize for purposes of collective bargaining, then it is the duty of the Legislature to enact legislation to limit supervisors from organizing with other supervisors. This Commission does not have the authority or power in deciding cases to attempt to legislate such a statutory change.

Following the designation of the appropriate bargaining unit, an election was conducted. Following the "Report of Election," and the "Certification Order" certifying the PLPSO as the exclusive collective bargaining agent for the bargaining unit

identified in the April 18, 1995, order, the District appealed. See Neb. Rev. Stat. § 48-812 (Reissue 1993).

## ASSIGNMENT OF ERROR

In its "Statement of Error and Issue on Appeal," the District declared the following to be at issue: "Whether the Commission erred in its determination of the appropriate employee bargaining unit." In its appellate brief, the District states: "The Commission of Industrial Relations erred in ordering that supervisors and the supervisory employees whom they supervise be included in the same bargaining unit. The Commission's order is contrary to law and is therefore arbitrary, capricious and unreasonable."

## STANDARD OF REVIEW

■ The parties agree that the applicable standard of review, as stated in *Nebraska Pub. Emp. v. City of Omaha*, 235 Neb. 768, 769, 457 N.W.2d 429, 430 (1990), is as follows:

"In reviewing a decision of the CIR, this court will consider whether the decision is supported by substantial evidence, whether the CIR acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable." (Emphasis [omitted].) *Douglas Cty. Health Dept. Emp. Assn. v. Douglas Cty.*, 229 Neb. 301, 304, 427 N.W.2d 28, 33 (1988).

## ANALYSIS

The District argues generally that the CIR order pertaining to the appropriate bargaining unit is erroneous and that the CIR order is contrary to law and is, therefore, arbitrary, capricious, and unreasonable. Specifically, the District argues that Nebraska law prohibits the CIR-defined bargaining unit, which the District describes as being composed of supervisors and the people they supervise. The PLPSO responds that a community of interest exists among the members of the PLPSO, that the CIR finding of the appropriate bargaining unit is consistent with the bargaining units in the area of education labor law, and that the bargaining unit, composed largely of principals and assistant principals, is supported by the policy against undue frag-

mentation of bargaining units in the area of public employment. We agree with the PLPSO.

At the outset, this court notes that in the jurisprudence of CIR appeals pertaining to unit determinations, it is clear that each case must be decided on its own facts. See *Sheldon Station Employees Assn. v. Nebraska P. P. Dist.*, 202 Neb. 391, 275 N.W.2d 816 (1979). The Nebraska Supreme Court has stated that "[t]he factors appropriate to a bargaining unit consideration and the weight to be given each such factor must vary from case to case depending upon its particular applicability in each case." *Id.* at 396, 275 N.W.2d at 819. See, also, *American Assn. of University Professors v. Board of Regents*, 198 Neb. 243, 253 N.W.2d 1 (1977). Furthermore, in considering a CIR appeal, it has been stated: "It is not for the Supreme Court to resolve conflicts in the evidence. Credibility of witnesses and the weight to be given their testimony are for the administrative agency as the trier of fact." *Douglas Cty. Health Dept. Emp. Assn. v. Douglas Cty.*, 229 Neb. 301, 304, 427 N.W.2d 28, 33 (1988). The findings of the CIR are to be accorded great weight. *Crete Education Assn. v. School Dist. of Crete*, 193 Neb. 245, 226 N.W.2d 752 (1975).

In claiming that the CIR erred, the District argues that the bargaining unit identified in the April 18, 1995, order is improper under Nebraska law because included in it are "the School District's Administrators [and] Other Supervisors Whom They Supervise." Brief for appellant at 14. The District refers this court to case law and § 48-816(3)(a). Section 48-816(3)(a) states: "Except as provided in subdivisions (b) and (c) of this subsection, a supervisor shall not be included in a single bargaining unit with any other employee who is not a supervisor." Section 48-816(3)(b) pertains to fire and police department bargaining units, and § 48-816(3)(c) pertains to Class V school district administrators. In relevant part, § 48-816(3)(c) provides:

> All administrators employed by a Class V school district shall be presumed to have a community of interest and may join a single bargaining unit composed otherwise of teachers and other certificated employees for purposes of the Industrial Relations Act, except that the following

administrators shall be exempt: [superintendents, secretaries of the board of education, and others]. . . . In addition, all administrators employed by a Class V school district, except the exempt administrators, may form a separate bargaining unit represented either by the same bargaining agent for all collective-bargaining purposes as the teachers and other certificated employees or by another collective-bargaining agent of such administrators' choice.

The words of a statute shall be given their plain, ordinary meaning. *Koterzina v. Copple Chevrolet*, 249 Neb. 158, 542 N.W.2d 696 (1996). A plain reading of § 48-816(3)(a), stated in positive form, is that except as provided in § 48-816(3)(b) and (c), a supervisor may be in the same bargaining unit with another supervisor. Further, under § 48-816(3)(a), a supervisor may not be in the same bargaining unit as an employee who is not a supervisor. Section 48-816(3)(a) comports with case law which permits supervisors to belong to the same bargaining unit, see, e.g., *Nebraska Assn. of Pub. Emp. v. Nebraska Game & Parks Commission*, 197 Neb. 178, 247 N.W.2d 449 (1976), and additional case law which disfavors bargaining units composed of supervisors and rank and file workers, e.g., *City of Grand Island v. American Federation of S. C. & M. Employees*, 186 Neb. 711, 185 N.W.2d 860 (1971). Section 48-816(3)(a) clearly does not preclude the outcome in the CIR order.

The District argues that certain of the supervisors in the designated bargaining unit, in general the assistant principals, the coordinator of special services, and the director of English as a second language, are more akin to supervisees or employees, who may not be in the same bargaining unit as supervisors, such as principals and the director of special services. In connection with this argument, the District emphasizes the portion of the record which includes evidence that according to the assistant superintendent for personnel, the principal is the "boss," and that the principal evaluates the performance of the assistant principal in connection with merit pay. As a complement to this argument, the District notes, and the record shows, that in connection with taking days off from work, the assistant principals

submit a form to the principals and that when absent unexpectedly, the assistant principals notify the principals.

 The record shows that the assistant superintendent for personnel testified that in connection with salaries, the District has worked with the PLPSO informally and that apparently the salary issues were resolved through this mechanism. However, she continued, were the principals and assistant principals to be officially recognized in one group, there would be a potential for conflict.

The PLPSO claims on appeal that the CIR determination of the appropriate bargaining unit is legally sound and supported by the evidence. The PLPSO argues that the record shows that there is a community of interest among the individuals in the bargaining unit designated by the CIR, that case law pertaining to educational settings supports the bargaining unit defined by the CIR, and that the bargaining unit defined by the CIR comports with the policy against undue fragmentation of bargaining units in the area of public employment.

With regard to the community of interest, the PLPSO refers to evidence in the record to the effect that principals and assistant principals are paid according to the same administrative salary scale based on negotiations in which the principals and assistant principals had met with the board of education in the early 1980's and that the principals and assistant principals share from the same merit pay pool. According to the record, the PLPSO has met with the board of education to discuss working conditions. Both high school principals and assistant high school principals are on a 260-day contract. All persons in the designated bargaining unit receive the same fringe benefits, and all persons in the designated bargaining unit have a master's degree and an administrator's license. There is evidence in the record that all persons in the designated bargaining unit, as well as the teachers, treat the superintendent as the "boss." Testimony indicates that the principals and the assistant principals meet twice a month to deal with issues within the school district. Both principals and assistant principals serve on committees at the district level. A principal testified that he did not supervise the assistant principals at the same school "on a daily basis." A principal and an assistant principal both testified that

they did not see a problem being in the same bargaining unit. The parties stipulated that in varying degrees, the principals, the assistant principals, and the other individuals in the proposed bargaining unit all have supervisory duties.

The PLPSO refers the court to case law pertaining to the educational setting including *American Assn. of University Professors v. Board of Regents*, 203 Neb. 628, 279 N.W.2d 621 (1979), and *American Assn. of University Professors v. Board of Regents*, 198 Neb. 243, 253 N.W.2d 1 (1977). In the 1977 case, the Nebraska Supreme Court approved a bargaining unit composed of department chairs and other faculty based in part on the evidence of collegiality within the group in the educational setting. In this regard, the Nebraska Supreme Court commented on the "spirit of collegiality" found in the education environment. *Id.*, 198 Neb. at 271, 253 N.W.2d at 15.

The PLPSO also refers this court to the cases which demonstrate a public policy against undue fragmentation of bargaining units in the public sector such as *House Officers Assn. v. University of Nebraska Medical Center*, 198 Neb. 697, 255 N.W.2d 258 (1977), and *Sheldon Station Employees Assn. v. Nebraska P. P. Dist.*, 202 Neb. 391, 275 N.W.2d 816 (1979). See, also, Neb. Rev. Stat. § 48-838(2) (Reissue 1993). In *Sheldon Station Employees Assn.*, the Nebraska Supreme Court stated: "Clearly, it is the intent of the Legislature that fragmentation of bargaining units within the public sector is to be avoided." 202 Neb. at 396, 275 N.W.2d at 819.

We have reviewed the CIR order of unit determination and the record in accordance with the standard of review recited above. The order evaluates the evidence in light of the factors that are set forth in cases such as *American Assn. of University Professors v. Board of Regents*, 198 Neb. 243, 253 N.W.2d 1 (1977), and *City of Grand Island v. American Federation of S. C. & M. Employees*, 186 Neb. 711, 185 N.W.2d 860 (1971), but not repeated here in detail. Our review of the record shows that the factual conclusions of the order are supported by substantial evidence.

The District does not quarrel directly with specific factual findings, but seeks reversal based on the argument that the legal

conclusions of the CIR order are contrary to law and, therefore, are arbitrary, capricious, and unreasonable. We do not agree.

There is a melange of legal principles applicable to this case. Although conceding that supervisors and supervisory employees are not absolutely prohibited from bargaining units, see, e.g., *Nebraska Assn. of Pub. Emp. v. Nebraska Game & Parks Commission*, 197 Neb. 178, 247 N.W.2d 449 (1976), the District urges this court to reverse the CIR order primarily on the basis that supervisors and the people they supervise should not be in the same bargaining unit. The District relies heavily on *Supervisory, Managerial, and Professional Employees Bargaining Association v. City of Bellevue*, 11 CIR 48 (1991). The proposition in *City of Bellevue* that supervisors and supervisory employees whom they supervise should not be in the same unit was specifically overruled by the order in the instant case. Even if it were conceded that the assistant principals are supervised in some measure by the principals, such characterization would not necessarily require separate bargaining units.

In *American Assn. of University Professors v. Board of Regents*, 198 Neb. at 261-62, 253 N.W.2d at 11, the Nebraska Supreme Court stated:

> It has long been held that a basic inquiry in unit determinations is whether a community of interest exists among the employees which is sufficiently strong to warrant their inclusion in a single unit. See Note, 59 Va. L. Rev. 492, The Appropriate Faculty Bargaining Unit in Private Colleges and Universities (1973).

In *City of Grand Island, supra*, the Nebraska Supreme Court determined that decisions of the National Labor Relations Board with respect to appropriate bargaining units were helpful. The court listed factors to be considered in determining the appropriate bargaining unit, including "mutuality of interest in wages, hours, and working conditions; the duties and skills of the employees; the extent of union organization among the employees; and the desires of the employees." 186 Neb. at 714, 185 N.W.2d at 863. In *Cornell University*, 183 NLRB 329, 336 (1970), the National Labor Relations Board said:

> In determining whether a particular group of employees constitutes an appropriate unit for bargaining where an

employer operates a number of facilities, the Board considers such factors as prior bargaining history, centralization of management particularly in regard to labor relations, extent of employee interchange, degree of interdependence or autonomy of the plants, differences or similarities in skills and functions of the employees, and geographical location of the facilities in relation to each other.

The factors in *Cornell University* were cited with approval in *American Assn. of University Professors v. Board of Regents*, 198 Neb. 243, 253 N.W.2d 1 (1977). See, also, *City of Grand Island, supra*.

The CIR order properly considered the many factors relevant to the determination of an appropriate bargaining unit noted in the cases cited above. The CIR thereafter concluded that there was a community of interest in the proposed bargaining unit and that it was, therefore, appropriate. See, also, *IBEW Local 1536 v. Lincoln Elec. Sys.*, 215 Neb. 840, 341 N.W.2d 340 (1983). Our review of the evidence and the case law leads us to conclude that the CIR did not err on the facts or the law in finding the existence of a sufficient community of interest to warrant designation of the PLPSO as the appropriate unit.

In its brief on appeal, the District refers this court to § 48-816(3)(c), quoted earlier in this opinion, which in its first sentence provides a statutory presumption that administrators employed by a Class V school district have a community of interest and permits administrators in a Class V school district to join a bargaining unit with teachers. Elsewhere, § 48-816(3)(c) provides that such administrators may form a separate bargaining unit represented either by the teachers' bargaining agent or by a different bargaining agent. The parties note that Omaha is the only Class V school district in Nebraska and that Papillion/LaVista is a Class III school district. The District claims that § 48-816(3)(c) is limited by its language to a Class V school district and, therefore, that § 48-816(3)(c) prevents a finding that a group of administrators in a Class III school district is or may be an appropriate bargaining unit. We do not agree.

The Nebraska Teachers' Professional Negotiations Act was repealed by 1987 Neb. Laws, L.B. 524, thereby placing teacher collective bargaining under the Industrial Relations Act, Neb. Rev. Stat. § 48-801 et seq. (Reissue 1993). The following year, 1988 Neb. Laws, L.B. 942, was enacted, specifically allowing a bargaining unit of administrators and teachers in a Class V school district. This provision overcame CIR case law, to which educators became subject in 1987, which disfavored bargaining units composed of administrators and rank and file employees. To the extent there is ambiguity in the statute, a review of the legislative history of L.B. 942 shows that administrators and teachers in Omaha had organized together since 1917 and that § 48-816(3)(c) was enacted to preserve that arrangement, notwithstanding the fact that the teachers and administrators had become subject to the Industrial Relations Act in 1987. Committee on Business and Labor Hearing, 90th Leg., 2d Sess. 61-64 (Feb. 8, 1988). The fact that § 48-816(3)(c) additionally permits Class V school district administrators to join with each other, instead of with teachers, in a bargaining unit does not preclude a comparable outcome in the context of litigation where the evidence shows a community of interest within a group of administrators with varying degrees of supervisory duty in a Class III school district.

The CIR made reference to case law in the educational setting in its unit determination order. In *American Assn. of University Professors v. Board of Regents,* 198 Neb. 243, 253 N.W.2d 1 (1977), the finding of a bargaining unit composed of both department chairs and faculty was affirmed. As indicated elsewhere in this opinion, the Nebraska Supreme Court noted that there existed a "spirit of collegiality" within this group. *Id.,* 198 Neb. at 271, 253 N.W.2d at 15. In this regard, among the facts noted by the Nebraska Supreme Court was the evidence showing that the department chairs made recommendations to a higher authority, i.e., the deans, regarding departmental matters after consulting with the faculty, a process similar to that shown by evidence in this case. See *id.* The CIR order, noting a "collegial educational environment" in the instant matter, is consistent with the facts of this case and case law in the educational setting.

The CIR correctly noted in its order that Nebraska law avoids undue fragmentation of bargaining units within the public sector. See, *Sheldon Station Employees Assn. v. Nebraska P. P. Dist.*, 202 Neb. 391, 275 N.W.2d 816 (1979); *House Officers Assn. v. University of Nebraska Medical Center*, 198 Neb. 697, 255 N.W.2d 258 (1977). Our review of the CIR decision shows that its factual findings are supported by the record. Further, the conclusions of the CIR are consistent with the case law disfavoring undue fragmentation of bargaining units within the public sector, with the statutes, and with existing case law pertaining generally to organizing supervisors.

Because we find that there is substantial evidence to support the CIR decision and we conclude that the CIR acted within its authority and that the CIR action was not arbitrary, capricious, or unreasonable, we affirm.

AFFIRMED.