UNIVERSITY POLICE OFFICERS UNION, INTERNATIONAL BROTHERHOOD OF POLICE OFFICERS, LOCAL 567, APPELLEE AND CROSS-APPELLANT, V. UNIVERSITY OF NEBRASKA, A BODY CORPORATE, AND THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, APPELLANTS AND CROSS-APPELLEES.

277 N. W. 2d 529

Filed April 10, 1979. Nos. 41916, 41917.

John C. Gourlay, for appellants.

J. Murry Shaeffer, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C. J.

This matter involves two separate appeals from orders entered by the Court of Industrial Relations (CIR) on December 20, 1977. Case No. 41916 is the result of a petition filed with the CIR by the University Police Officers Union, International Brotherhood of Police Officers, Local 567, (University Police Officers), asking the CIR to declare all commissioned police officers and all security officers employed by the University of Nebraska-Lincoln, Department of Police and Security, excluding the director and three immediate assistants holding authority subordinate only to the director, as the appropriate unit for purposes of exclusive representation and bargaining. The petition recited that University Police Officers had on two occasions requested voluntary recognition and that both requests were denied by appellants. For purposes of convenience the appellants in this case will be jointly referred to as UNL.

The petition further recited that there were approximately 37 employees in the requested unit. UNL filed its answer generally denying the claims made in the University Police Officers' petition.

UNL further alleged that the CIR did not have jurisdiction over UNL and even if jurisdiction were present, the proposed bargaining unit was not an appropriate unit.

On October 19, 1977, while the action in case No. 41916 was pending before the CIR and before a hearing was held, a subsequent petition, case No. 41917, was filed by University Police Officers with the CIR. That petition, supported by affidavits, alleged that UNL was harassing and intimidating certain police officers because of their union activity in violation of section 48-811, R. R. S. 1943. The following day an order was entered by the CIR. Said order stated in part: "The Court having convened, and upon the evidence * * *." Our examination of the record does not disclose, however, any hearing having been held or any evidence being introduced. Presumably the order of the court entered on October 20, 1977, was based upon the affidavits filed by University Police Officers the day before. What opportunity UNL was given to respond to the affidavits or to be heard is not made clear by the record.

In any event, the CIR entered a preemptory protective order prohibiting UNL from altering the status quo of any of the members of the University Police Officers. Said order also prohibited UNL from engaging in any action intended to or tending to intimidate plaintiff or its members or to encourage such members to abandon plaintiff as a prospective bargaining agent. The CIR further specifically prohibited UNL from altering the status of, or reclassifying, Officer Barbara McGill and Officer Mary Fleming. It further ordered that if any change in the status quo had been made prior to the receipt of the order, such change was to be voided.

The CIR further ordered UNL to post a copy of its order on each bulletin board or other place regularly used by UNL to communicate with members of the University Police Officers. The CIR consolidated

case No. 41917 for trial with case No. 41916, and hearing was held on both matters.

Thereafter, on December 20, 1977, CIR entered its opinion and order finding that the CIR had jurisdiction over UNL; that UNL had committed what the CIR described as "unfair labor practices;" that the appropriate unit for purposes of bargaining, a unit consisting of all commissioned police officers and all security officers employed by the University of Nebraska-Lincoln, Department of Police and Security, excluding officers of the rank of sergeant and above, be established; and it entered certain orders in connection therewith. The ordered unit was not sought by either party. An election to determine whether the proposed unit should serve as the exclusive collective bargaining agent was also ordered by the CIR.

UNL perfected its appeal to this court assigning as error three basic propositions: (1) That the CIR was without jurisdiction over UNL by reason of the provisions of Article VII, section 10, of the Constitution of the State of Nebraska, and our holding in Board of Regents v. Exon, 199 Neb. 146, 256 N. W. 2d 330; (2) that the unit designated by the CIR as the appropriate unit was inappropriate under the circumstances; and (3) that UNL had not committed any "unfair labor practices." The University Police Officers cross-appealed maintaining that the CIR was in error in excluding, from the appropriate unit, officers of the rank of sergeant and above.

We shall proceed to review these matters individually, turning first to the question of whether the CIR does in fact have jurisdiction over UNL.

Article VII, section 10, of the Constitution of the State of Nebraska provides in part as follows: "The general government of the University of Nebraska shall, under the direction of the Legislature, be vested in a board of not less than six nor more than eight regents to be designated the Board of Regents

of the University of Nebraska * * *." In the case of Board of Regents v. Exon, *supra*, this court, in reviewing that section of the Constitution, said, "Thus, although the Legislature may add to or subtract from the powers and duties of the Regents, the general government of the University must remain vested in the Board of Regents and powers or duties that should remain in the Regents cannot be delegated to other officers or agencies." We there further said, "The determination of salary schedules and the compensation to be paid to the employees of the Board of Regents is an integral part of the general government of the University."

UNL argues that the provisions of the Constitution referred to above and our decision in Board of Regents v. Exon, *supra,* foreclose any further discussion in this case. UNL claims that the aforesaid clearly establishes that it is constitutionally empowered to set its own salaries and terms and conditions of employment as an integral part of its governance of the University. Consequently, the Legislature may not interfere in that function by vesting certain authority in the CIR to rule over said UNL matters. If we confine our reading only to Article VII, section 10, of the Constitution of the State of Nebraska, such a result might seem correct. The Constitution, however, contains other provisions which must be read in connection with Article VII, section 10, and which must result in reaching a contrary conclusion.

In Anderson v. Tiemann, 182 Neb. 393, 155 N. W. 2d 322, we said: "This court has also recognized the principle of constitutional interpretation that each and every clause in a constitution has been inserted for some useful purpose. Constitutional provisions should receive even broader and more liberal construction than statutes, and constitutions are not subject to rules of strict construction. See, also, School Dist. of Seward Education Assn. v. School

Dist. of Seward, 188 Neb. 772, 199 N. W. 2d 752.

In addition to the provisions of Article VII, section 10, of the Constitution of the State of Nebraska, the Constitution contains Article XV, section 9, which provides as follows: "Laws may be enacted providing for the investigation, submission and determination of controversies between employers and employees in any business or vocation affected with a public interest, and for the prevention of unfair business practices and unconscionable gains in any business or vocation affecting the public welfare. An Industrial Commission may be created for the purpose of administering such laws, and appeals shall lie to the Supreme Court from the final orders and judgments of such commission." No exception is made for UNL thereunder. It is of significance to note that both Article VII, section 10, and Article XV, section 9, of the Nebraska State Constitution were a part of the 1920 Constitutional Convention. Moreover, Article VII, section 10, of the Constitution has been amended twice since its adoption. Yet no language has been inserted which in any way exempts the provisions of Article VII, section 10, from the provisions of Article XV, section 9. We are therefore compelled to read both sections together harmoniously. We do not find it difficult to do so. Article VII, section 10, does indeed grant to the University of Nebraska the *primary* general governance of the University. In essence, UNL is granted the authority in the first instance to govern its operation, including the establishment of the salary schedules and compensation to be paid its employees. It is only when a dispute arises between UNL and its employees that the provisions of Article XV, section 9, and the provisions of sections 48-801 to 48-838, R. R. S. 1943, come into play. There appears to be nothing improper or inconsistent with such a result. To the extent that UNL can without controversy establish schedules of wages, terms and condi-

tions of employment, and hours of labor, neither the Legislature nor anyone else may interfere. If, however, a controversy between UNL and its employees arises, the Constitution grants to the Legislature authority to enact laws to resolve that controversy. This is really nothing other than simply prescribing a forum wherein controversies involving a public employer and its employees may be arbitrated. Certainly UNL would not argue that their authority is so absolute that an employee could have no recourse anywhere if a dispute existed between the employer and the employee.

Further examples of the above are easy to find. While UNL does have primary authority over its own governance, nevertheless, it is by statute bound by the provisions of the Nebraska Workmen's Compensation Law, sections 48-192 to 48-1,109, R. R. S. 1943. Likewise, UNL is subject to the provisions of the Nebraska Employment Securities Law, sections 48-601 to 48-669, R. R. S. 1943. Further examples could be given.

We therefore hold that UNL has primary authority for establishing its own schedules of wages, terms and conditions of employment, and hours of labor; but when an industrial dispute, as defined by section 48-801 (7), R. R. S. 1943, arises, the CIR acquires jurisdiction for the limited purpose of resolving such dispute. Likewise, the CIR acquires jurisdiction for resolving an industrial dispute concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment or refusal to discuss terms or conditions of employment. As there was an industrial dispute in existence, the CIR was correct in holding it had jurisdiction over UNL in this case.

We now turn to the next assignment of error. In its order of December 20, 1977, the CIR included the following: "We then turn to the far more difficult

task of evaluating the evidence and determining the issues raised as to illegal practices *or what is known elsewhere in labor law as 'unfair labor practices.' "* (Emphasis supplied.) Further in its order the CIR recited, "We note that the NLRB consistently holds past practice to be the guide in making decisions under Section 8a and 8b of the NLRA as to what is or is not an unfair labor practice. We consider the NLRB practice as sufficient confirmation of our own judgment as to the standard to be applied, and proceed on that basis."

It would appear from reading the order of the CIR that it is of the opinion that it has jurisdiction to determine "what is known elsewhere in labor law as 'unfair labor practices.' " Orders and rulings in connection therewith have thus been entered by the CIR previously. We have heretofore said that decisions under the National Labor Relations Act were helpful but not controlling upon either the CIR or this court. American Fed. of S., C. & M. Emp. v. State, 200 Neb. 171, 263 N. W. 2d 643. That declaration must be carefully understood to mean that decisions under the NLRB are helpful where there are similar provisions under the Nebraska statutes. Decisions under the NLRB are of no help or benefit in attempting to determine actions absent similar provisions under the Nebraska statutes. Nor can common practices under other statutes in other jurisdictions enlarge the statutory power granted the CIR by the Legislature.

In Orleans Education Assn. v. School Dist. of Orleans, 193 Neb. 675, 229 N. W. 2d 172, we said, " 'In the grant of power to an administrative agency to legislate, such power must be limited to the expressed purpose and administered in accordance with standards prescribed in the legislative act.' " Recently, in Nebraska P. P. Dist. v. Huebner, 202 Neb. 587, 276 N. W. 2d 228, we said: "An administrative board has no power or authority other than that

specifically conferred upon it by statute or by a construction necessary to accomplish the purpose of the act." That authority which is necessary to accomplish the purposes of an act must be narrowly construed.

It is fundamental that in the legislative grant of power to an administrative agency, such power must be limited to the expressed legislative purpose and administered in accordance with standards described in the legislative act. The limitations of the power granted and the standards by which the granted powers are to be administered must be clearly and definitely stated. They may not rest on indefinite, obscure, or vague generalities or upon extrinsic evidence not readily available. Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227; Gillette Dairy, Inc. v. Nebraska Dairy Products Board, 192 Neb. 89, 219 N. W. 2d 214.

Section 8a of the NLRA specifically provides that the doing of certain enumerated acts by an employer constitutes an "unfair labor practice." Likewise, the provisions of section 8b of the NLRA specifically provide that the doing of certain enumerated acts by the union constitutes an unfair labor practice. See 29 U. S. C. 158 (a) and (b). The NLRA grants to the NLRB specific authority to enforce its orders, including the right to direct the employer to take specific action and to enjoin the employer from continuing the commission of unfair labor practices. See 29 U. S. C. 160. Likewise, see, Michigan public sector laws, Mich. Comp. Laws Ann., §§ 423.210 and 423.216; Wisconsin public sector laws, Wisc. Stats. Ann. § 111.84; and New York Civil Service Law, §§ 205 and 209 (a).

No such similar authority can be found in the Nebraska statutes. In the absence of such specific authority the CIR is without jurisdiction to generally find and declare "what is known elsewhere in labor law as 'unfair labor practices.'"

A reading of the applicable provisions of the act clearly establishes that the authority of the CIR is narrowly described and is limited in scope. In the first instance, it is limited to "industrial disputes" as defined by section 48-801 (7), R. R. S. 1943. These include any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or refusal to discuss terms or conditions of employment. While this may provide in some limited instances authority for the CIR to act, it does not grant to the CIR the authority to declare unfair labor practices and to take action therefor.

The adoption of sections 48-801 to 48-838, R. R. S. 1943, was not intended to in any way remove the lawful responsibility or the proper prerogative of public employers in the exercise of their recognized management rights, or in the exercise of their lawful duties, except as may otherwise have been specifically entrusted to the CIR in resolving industrial disputes as prescribed by the statutes.

In a similar situation involving a school district, we attempted in some small measure to point out that there are certain areas under the Nebraska public sector laws which are "rights of management" over which no controversy can be created nor any authority vested in the CIR. In School Dist. of Seward Education Assn. v. School Dist. of Seward, 188 Neb. 772, 199 N. W. 2d 752, at p. 784, we said, "Without attempting in any way to be specific, or to limit the foregoing, we would consider the following to be exclusively within the management prerogative: The right to hire; to maintain order and efficiency; to schedule work; to control transfers and assignments; to determine what extracurricular activities may be supported or sponsored; and to determine the curriculum, class size, and types of

specialists to be employed. The public policy involved in this legislation is expressed in section 48-802, R. R. S. 1943. With this public policy in mind, school districts and teacher associations should negotiate in good faith within the ambit of their respective responsibilities.''

Many of the factors involved in School Dist. of Seward Education Assn. v. School Dist. of Seward, *supra,* are not applicable here. It nevertheless does point up the fact that not all matters about which the public employer and its employees disagree constitute an industrial dispute over which the CIR obtains jurisdiction. This remains so notwithstanding the fact that in the private sector such matters or activities would be properly before the NLRB and elsewhere might constitute an unfair labor practice.

A further reading of the act and the powers specifically granted to the CIR only further strengthens that position. Nowhere within the act can there be found any provisions similar to section 8a or 8b of the NLRA.

We have early held that in the absence of specific statutory authority, public employers do not even have the right to negotiate and bargain with public employees. In International Brotherhood of Electrical Workers v. City of Hastings, 179 Neb. 455, 138 N. W. 2d 822, we said: ''Up to the present time, public employees are generally not entitled to collective bargaining in the sense that private industrial employees are. See Annotation, 31 A.L.R. 2d 1142. The generally accepted rule established in other jurisdictions on the issue, which we adopt, is that a public agency or governmental employer has no legal authority to bargain with a labor union in the absence of express statutory authority * * *.'' Likewise, in the case of Orleans Education Assn. v. School Dist. of Orleans, *supra,* we said, in part: ''The authority of the Court of Industrial Relations is carefully circumscribed. Its procedures are pre-

scribed by statute. * * * Its jurisdiction is clearly defined and is limited to what are clearly legislative concerns. §§ 48-801 (7), 48-810, R. R. S. 1943. The Court of Industrial Relations cannot enforce its own orders. That is left to the District Court and to this court. §§ 48-812, 48-819, R. R. S. 1943.''

In that regard, it is significant to note that section 48-819, R. R. S. 1943, specifically denies to the CIR authority to enforce its own rules. The statute further requires that ''Failure on the part of any person to obey any order, decree or judgment of the Court of Industrial Relations, either temporary or final, shall constitute a contempt of such tribunal in all cases where similar failure to obey a similar order, decree or judgment of a district court would constitute a contempt of such tribunal, and upon application to the appropriate district court of the state shall be dealt with as would a similar contempt of said district court.''

The only provisions which can be found in the act concerning activities of the employer are found in section 48-811, R. R. S. 1943, and apply only during the pendency of a petition for recognition. That section provides, in part: ''No adverse action by threat or harassment shall be taken against any employee because of any petition filing by such employee, and the employment status of such employee shall not be altered in any way pending disposition of the petition by the Court.'' The provisions of section 48-811, R. R. S. 1943, do not constitute matters similar to those prescribed in sections 8a and 8b of the NLRA. Thus, the CIR does not, by reason of section 48-811, R. R. S. 1943, have authority to declare unfair labor practices. If, in fact, the evidence discloses that a public employer is threatening or harassing an employee because of any petition filing by such employee, the CIR is limited to entering an order directing the employer to cease and desist such threat or harassment. The CIR has no authority, however, to require any-

thing further. Upon failure of the public employer to cease and desist, action must be brought by the employee in the appropriate District Court seeking to hold the public employer guilty of contempt of court. Other action, which an employee may seek in connection with a public employer's action against such employee, must be sought by other means in appropriate courts and not before the CIR. To that extent, therefore, the ordering of UNL to remove letters from the employee's file, the ordering of the employer to establish certain times for employee evaluation, or the ordering of the reinstatement of employees at certain prescribed salaries for certain short periods was beyond the authority of the CIR. Such action is hereby reversed. Nothing we say herein, however, should imply that an employee may not have a cause of action if in fact the employee's rights have been violated. Nevertheless, that remedy must be sought in the appropriate forum and not in the CIR.

We note that the CIR directed UNL to post a copy of its temporary order, and in its opinion of December 20, 1977, suggested it was considering requiring UNL to post "mea culpa" notices. The CIR is without authority to make such orders. Its authority is limited to the provisions of section 48-818, R. R. S. 1943, wherein it is provided that the CIR's findings and orders may establish or alter the scale of wages, hours of labor, or conditions of employment.

It is true that the CIR has power and authority upon its own initiative to make such *temporary* findings and orders as may be necessary to preserve and protect the status of the parties' property and public interest involved pending final determination. The statute is not so broad as to authorize the CIR to make findings with regard to unfair labor practices or direct a public employer to take any more action than is necessary to preserve and protect the status of the parties' property and public interest involved

pending final determination of the issues. We will not now attempt to enumerate all the possible circumstances under which the CIR may exercise its authority. We do note, however, that the authority granted to the CIR under the present act in general and section 48-816, R. R. S. 1943, in particular, is limited in nature. We would anticipate that the CIR will exercise that jurisdiction in as narrow a manner as may be necessary.

In view of our holding with regard to the authority of the CIR to find and determine "unfair labor practices" it is not of particular importance that we examine and comment on the entire record. The record consisted of more than 700 pages of which only 16 pages concerned the issue involving the determination of the appropriate bargaining unit. Nevertheless, we have examined the record. We do believe some brief comment may be sufficient to show that the record does not establish threats or harassment against the employees as contemplated within section 48-811, R. R. S. 1943.

One of the complaints made by the police officers was that female employees of the police force were required to wear a particular style of hat. It was alleged that this requirement was motivated by UNL's antiunion feeling and its desire to threaten or harass the employee. The CIR, as a matter of fact, specifically found that the department used the "inefficiency" of its supply operations to harass Officer Citta as union president. Yet a reading of the record discloses that the request for the hat came from two of the four female employees affected herein and was not instituted by Chief Gade.

In regard to Officers McGill and Fleming, the testimony of Mr. Carlbom, Chief Gade, Inspectors Duve and Meyers, and Captain Edmunds clearly established that the proposed reclassification was pursued solely for the employees' benefit, and that their union affiliation was never considered. It is true

that what the department sought to do may not have been permitted under UNL personnel policy. Nevertheless the evidence is clear that the transfers were intended to provide continued employment opportunities on a reduced salary basis for two employees who otherwise would have been required to discontinue their employment and use up leave time which they otherwise might retain. Both officers were advised of the department's options; both were informed as to the reasons why the reclassification was proposed; both were assured repeatedly that this was only temporary in nature; and both officers were guaranteed by the head of the department that they would be reinstated to their original jobs as soon as they were physically able to perform the functions of those positions. Such action hardly amounts to threats or harassment.

That leaves us then with but the final question, the appropriateness of the bargaining unit. It must be kept in mind that actions arising under the provisions of sections 48-801 to 48-838, R. R. S. 1943, concerning appropriate bargaining units are of relatively recent origin and to some extent both the public employers and public employees, the CIR, and this court are seeking to establish appropriate guidelines. In more recent times we have more closely adhered to the legislative admonition contained in section 48-838 (2), R. R. S. 1943, wherein the Legislature provided: "It shall be presumed, in the case of governmental subdivisions such as municipalities, counties, power districts, or utility districts with no previous history of collective bargaining, that units of employees of less than departmental size shall not be appropriate." See American Assn. of University Professors v. Board of Regents, 198 Neb. 243, 253 N. W. 2d 1; House Officers Assn. v. University of Nebraska Medical Center, 198 Neb. 697, 255 N. W. 2d 258; and Sheldon Station Employees Assn. v. Nebraska P. P. Dist., 202 Neb. 391, 275 N. W. 2d 816.

In order for us, therefore, to find that all commissioned police officers and all security officers employed by the University of Nebraska-Lincoln, Department of Police and Security, excluding either the director and his three immediate assistants holding authority subordinate only to the director, as requested by the police officers or excluding everyone with the rank of sergeant or above as directed by the CIR, are an appropriate unit, we must find some compelling unity of interest as disclosed in the record. At the outset we note that the unit sought by the police officers includes not only commissioned police officers, but also noncommissioned security officers. One of the compelling reasons urged by the police officers for the granting of this particular unit is the fact that certain of the employees are commissioned as deputy sheriffs by the State of Nebraska and special police by the City of Lincoln. It must be noted, however, that the granting of that authority is not by the employer, but by another, over whom the employer has no control. Those commissions could be withdrawn just as easily as they were granted. The record does not indicate to us the great need for those commissions. The evidence indicates that security personnel at UNO and at the Medical Center are not commissioned and do not carry weapons yet provide whatever necessary security is required at UNO and at the Medical Center. The record is totally devoid of any evidence as to the need for the officers at UNL to be so commissioned or to carry weapons. While we do not question what they are doing, the record does not indicate to us any significant reasons why the fact that they have sought commissions from other governmental agencies or the fact that they carry weapons is sufficient to entitle them to be separate and apart from other C-line or B-line employees at UNL.

The evidence further discloses, notwithstanding that some of the police officers carry weapons and

are commissioned, others are not, yet all are subject to the rules, regulations, and employees handbook promulgated by UNL and the state personnel policies and procedures. There is no evidence in the record upon which the CIR could make a rational analysis of those criteria which we have heretofore indicated are relevant in evaluating an appropriate unit and therefore no evidence is present which we can examine or review in this court on appeal. In the absence of such evidence, we are not persuaded that the clear dictates of section 48-838 (2), R. R. S. 1943, should be ignored.

We therefore find a unit consisting of all commissioned police officers and all security officers employed by the University of Nebraska-Lincoln, Department of Police and Security, excluding the director and his three immediate assistants holding authority subordinate only to the director, as requested by the police officers, is not appropriate. We also find a unit consisting of all commissioned police officers and all security officers employed by the University of Nebraska-Lincoln, Department of Police and Security, excluding the rank of sergeant and above, as provided by the CIR, is not appropriate. It would appear to us, in the absence of evidence to the contrary, that the dictates of section 48-838 (2), R. R. S. 1943, should be followed.

For the reasons more particularly set out above, the order of the Court of Industrial Relations is affirmed in part, and in part reversed and remanded with directions in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED.