STATE COLLEGES EDUCATION ASSOCIATION, APPELLEE, V.
BOARD OF TRUSTEES OF THE NEBRASKA STATE
COLLEGES, APPELLANT. CHADRON STATE COLLEGE
TEACHING FACULTY BARGAINING UNIT, APPELLEE, V.
BOARD OF TRUSTEES OF THE NEBRASKA STATE
COLLEGES, APPELLANT, IMPLEADED WITH CHADRON
STATE COLLEGE, APPELLEE.

286 N. W. 2d 433

Filed December 18, 1979. No. 42413.

George C. Rozmarin of Swarr, May, Smith & Andersen, for appellant.

Crosby, Guenzel, Davis, Kessner & Kuester, for appellee State Colleges Education Assoc.

Wright & Simmons and John A. Selzer, for appellee Chadron State College Teaching Faculty Bargaining Unit.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an appeal by the Board of Trustees of the Nebraska State Colleges from an order of the Court of Industrial Relations (now Commission of Industrial Relations, L.B. 444, Laws 1979), determining an appropriate unit for bargaining and voting pursuant to the provisions of section 48-838, R. R. S. 1943. Government of the four state colleges is vested in the Board by Article VII, section 13, of the Nebraska Constitution, which provides in part: "The general government of the state colleges as now existing, and such other state colleges as may be established by law, shall be vested, under the direction of the Legislature, in a board of seven members to be styled as designated by the Legislature, six of whom shall be appointed by the Governor, with the advice and consent of the Legislature, . . . and the Commissioner of Education shall be a member ex officio. The duties and powers of the board shall be prescribed by law . . . ."

Two separate petitions for a certificate election were consolidated and heard before the commission. The first petition was filed by the State Colleges Education Association (SCEA), one of the appellees, and prayed that the designated unit consist of teaching faculty at the four state colleges at Chadron, Kearney, Peru, and Wayne. The second petition was filed by the Chadron State College Teaching Faculty Bargaining Unit (CSCTFBU), the other appellee, and asked that a separate unit be designated

for the college at Chadron. After hearing, the commission determined: "The sole issue before the court, therefore, is whether there should be a single unit for all teaching faculty of the four colleges governed by the Board, or a separate campus unit for the faculty at Chadron." The commission then entered an order establishing a unit for the Chadron campus. Because there was no issue before the commission as to representation at the other three colleges, either separately or as a group, no bargaining unit or units for those campuses were designated.

The Board makes the following assignments of error: (1) The commission erred in assuming subject-matter jurisdiction over the Board of Trustees of the Nebraska State Colleges. (2) The order of the commission is contrary to law. (3) The order of the commission is contrary to the evidence and is not supported by substantial evidence.

The issue raised by the first assignment has been decided by this court in Retail & Professional Emp. Union v. Board of Trustees, 203 Neb. 829, 280 N. W. 2d 656, where we said that the issue was governed by University Police Officers Union v. University of Nebraska, 203 Neb. 4, 277 N. W. 2d 529, and held that the Commission of Industrial Relations has jurisdiction in industrial disputes involving the Board of Trustees of the Nebraska State Colleges and its employees.

The second and third assignments of error will be discussed together because, although one involves an issue of law and the other issues of fact, the two assignments are interwoven in that an error of law may have affected the fact-findings of the commission to a degree which we cannot determine.

A brief introductory description of the nature of the connection between the error of law and the fact-findings of the commission may be helpful in following the more detailed development of that matter in

the balance of this opinion. The commission discounted to some degree the prior bargaining history between the Board and its employees because the commission had, in an earlier case, declared void certain labor contracts between the Board and its employees. In so doing, it acted beyond its jurisdiction. The prior bargaining history should have been given full weight. However, since we do not review fact-findings of the court de novo, we cannot resolve the issue as a matter of law and the case must be reversed and remanded for rehearing under a proper criterium.

In the case of American Assn. of University Professors v. Board of Regents, 198 Neb. 243, 253 N. W. 2d 1, we pointed out that the provisions of section 48-812, R. R. S. 1943, directing that this court review de novo findings of fact of the commission, was unconstitutional because it purported to delegate to this court an exercise of legislative power. See cases there cited on page 272. We then established, in part at least, the appropriate standard of review in the following language: ". . . review by this Court of orders and decisions of the Court of Industrial Relations is restricted to considering whether the order of that court is supported by substantial evidence justifying the order made, whether it acted within the scope of its statutory authority, and whether its action was arbitrary, capricious, or unreasonable."

Of particular importance in this case is the portion of the standard, "whether it acted within the scope of its statutory authority." Implicit in the portion of the standard quoted are the principles that the commission may not exceed its jurisdiction and that it is not free to disregard statutory standards governing the exercise of its power.

Having made the foregoing introductory statement, we now develop our consideration of the second and third assignments. On one point the posi-

tions of the Board and SCEA seem to be in agreement. The Board and the SCEA contend the commission misapplied the standards of section 48-838, R. R. S. 1943, in its findings that the teaching faculty at Chadron State College should be in a bargaining unit separate and apart from the teaching faculties at Wayne, Kearney, and Peru State Colleges.

Section 48-838(2), R. R. S. 1943, provides in part: "The court shall also determine the appropriate unit for bargaining and for voting in the election, and *in making such determination the court shall consider established bargaining units and established policies of the employer.*" (Emphasis supplied.) Although this is the only specific consideration mentioned in the statute, it is evident the Legislature did not intend that it be the sole consideration, for if it were there would be nothing for the commission to determine in cases where there existed no prior bargaining history.

In American Assn. of University Professors v. Board of Regents, *supra*, we said: "The considerations set forth in section 48-838 (2), R. S. Supp., 1974, in regard to collective bargaining units of employees, are not exclusive; and the Court of Industrial Relations may consider additional relevant factors in determining what bargaining unit of employees is appropriate. . . . A basic inquiry in bargaining unit determination is whether a community of interest exists among the employees which is sufficiently strong to warrant their inclusion in a single unit. . . . In determining whether a particular group of employees constitutes an appropriate bargaining unit where an employer operates a number of facilities, relevant factors include prior bargaining history; centralization of management, particularly in regard to labor relations; extent of employee interchange; degree of interdependence of autonomy of the facilities; differences or similarities in skills or functions of the employees; geo-

graphical location of the facilities in relation to each other; and possibility of over-fragmentation of bargaining units."

In its opinion in this case, the commission discussed the various relevant factors mentioned above, made specific findings pertaining to each factor, and, with reference to prior bargaining history, said: "[T]his factor constitutes the primary difference between the *Board of Regents* case and this one. There was no history of bargaining in that case, but there is in this one. The significance of this factor, however, *is somewhat diminished by the decision of this court in* (emphasis supplied) *Vathauer, et. al., v. HEAN (Higher Education Association of Nebraska) and Board of Trustees, Nebraska State Colleges*, 3 CIR 215-1 (1977), where this court determined that the agreement between HEAN and the Board for the year 1977-1978 was unenforceable and void, . . . ."

From 1970 until 1977, faculty of the four campuses was represented by a labor organization called Higher Education Association of Nebraska (HEAN). This group was the bargaining unit for faculty members and negotiated three contracts with the Board during that time period.

The commission's opinion in No. 215, referred to in the second preceding paragraph, was offered and received in evidence at the hearing in this case. The introductory paragraph in opinion No. 215 is as follows: "This action is one praying for a declaratory judgment that the contracts between the Board of Trustees of the Nebraska State Colleges and Higher Education Association of Nebraska and Chadron State College Education Association for the years 1976-77 and 1977-78 are void and unenforceable. We find that we have jurisdiction of the parties and of the subject matter." The commission then went on in that opinion to declare labor contracts between CSEA and the Board of Trustees and between HEAN

(a predecessor to CSEA) unenforceable and void. That opinion was entered on September 26, 1977.

Section 48-838, R. R. S. 1943, was first enacted in 1972 as section 4 of L.B. 1228, Laws 1972. It is clear from the context of that statute that prior bargaining history, whether it occurred under the auspices of the Court of Industrial Relations or not, was to be considered, for if that were not so, section 48-838(2), R. R. S. 1943, could not have had any initial application. The statute contains no indication whatever that this was intended. This is also clear from the fact that the last sentence of section 48-838(2), R. R. S. 1943, contains the provision that in the case of certain governmental entities "with no previous history of collective bargaining" that units of less than departmental size shall not be appropriate. The reference to no previous bargaining history would not have had any meaning unless it included bargaining history other than under the act. This conclusion is also apparent from the historical development of the jurisdiction of the commission.

Until the enactment of L.B. 15, Laws 1969, jurisdiction of the commission, insofar as governmental employees were concerned, could not be invoked other than on a voluntary basis, except in "industrial disputes involving governmental service in a proprietary capacity." L. B. 537, Laws 1947, c. 178, § 10, p. 590; L. B. 875, Laws 1967, c. 305, § 1, p. 828. L. B. 15, Laws 1969, permitted governmental employers to recognize, negotiate collectively with, and enter into contracts with employee organizations. It also provided a method for certification of employee organizations and granted them the right to bargain collectively. In 1972, the certification procedure was greatly amplified. Elections to determine bargaining representatives were included. The provision of section 48-838(2), R. R. S. 1943, previously quoted, to wit, "the court shall consider established bargaining units and established policies of the em-

ployer," came into law for the first time. L. B. 1228, Laws 1972.

It is quite clear that under our recent holding in Transport Workers of America v. Transit Auth. of City of Omaha, *ante* p. 26, 286 N. W. 2d 102, the commission has no authority to enter declaratory judgments or exercise other judicial functions. Its fact-finding powers are to be confined to the area of its jurisdiction in resolving industrial disputes as that term is defined in Transport Workers of America v. Transit Auth. of City of Omaha, *supra*. Its declaration of invalidity of the HEAN contract in No. 215 should not have been given any weight by the commission in its consideration of prior bargaining history in this case. It is apparent from the commission's opinion that it, to some extent, discounted or disregarded that bargaining history. This it was not free to do. Had it fully considered prior bargaining history, it may be that its finding would have been different.

The commission, in its opinion, noted that "the agreement between the Board and HEAN apparently did not contain all the applicable terms and conditions, inasmuch as the wages were left to be determined separately by each of the four individual institutions." That observation by the commission was, of course, a pertinent portion of the prior bargaining history and was a consideration which the commission could properly take into account and apparently did.

We have examined the record in this case. We will not summarize the evidence. The commission's findings on all the points it considered is supported by substantial evidence. However, the error of law requires reversal.

The order of the commission is reversed and the cause is remanded for rehearing.

REVERSED AND REMANDED.