PATRICK KUHL ET AL., APPELLANTS, V. JAMES SKINNER ET AL.,
APPELLEES.
515 N.W.2d 641

Filed May 6, 1994.   No. S-92-493.

Bruce G. Mason, of Bradford, Coenen, Ashford & Welsh, for appellants.

Kent N. Whinnery, Deputy Omaha City Attorney, and Sheri E. Long for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WHITE, J.

The Omaha Police Union Local 101 (Union) and three of its members, Patrick Kuhl, James Roberts, and Jack Caniglia

(collectively plaintiffs), brought a declaratory judgment action contesting the validity of an order issued by the chief of police, James Skinner. Plaintiffs named as defendants the City of Omaha (City), its chief of police, and its director of public safety, Pitmon Foxall. After a bench trial, the district court dismissed the petition, and plaintiffs appealed. Under our authority to regulate the caseloads of the appellate courts of this state, we removed the matter from the Nebraska Court of Appeals to this court. We now affirm.

The parties' dispute concerns holiday hours. The individual plaintiffs are employed under a collective bargaining agreement (CBA) entered into by the City and the Union. Under the CBA, work performed on a holiday is compensated at a premium rate. The CBA does not provide holiday work schedules and does not expressly indicate who has the power to decide holiday work schedules.

Prior to June 1991, sworn personnel worked holidays at their own discretion. Keith Lant, an ex-deputy police chief, testified that he had observed police officers who, upon approaching retirement, would increase the number of holidays they worked. By increasing the holiday hours worked and increasing their total yearly pay, the officers also increased their pensions because an officer's pension is based on his total yearly pay during his last year of work.

On June 5, 1991, the chief of police issued order No. 33-91. Order No. 33-91 established the following "policy": "[O]nly sworn personnel assigned to twenty-four hour functions will work on holidays unless otherwise determined as needed by the office of the Chief of Police." To effectuate this policy, order No. 33-91 announced the following "procedure": "All sworn personnel not on the card system and assigned regular days off will be off on the holiday unless otherwise authorized by the office of the Chief of Police." The record does not disclose what is meant by "on the card system." It appears, however, that order No. 33-91 prevented 5-day-a-week sworn personnel from working on holidays and earning premium holiday pay.

Plaintiffs filed suit seeking a declaratory judgment and injunctive relief. Plaintiffs alleged that the June 1991 order violated their rights under the CBA and violated their

constitutional rights to due process, equal protection, and freedom from impairment of contracts.

In discussing plaintiffs' due process claim, the district court first stated that plaintiffs had the burden to show that "fundamental fairness has been abdicated and fundamental rights have been abridged." The court noted that "[a]lthough it could be effectively argued that the Defendants have a duty to bargain . . . it could also be proffered that the Plaintiffs could have made this extra holiday pay a specific right in the Contract." Finding these arguments equally balanced, the court held that plaintiffs had failed to prove their case by a preponderance of the evidence. Accordingly, the court dismissed the petition.

Plaintiffs allege that the district court erred (1) in failing to find that the City had a duty to bargain prior to making a unilateral change, (2) in failing to find that plaintiffs possessed a property right in collective bargaining, (3) in applying fundamental fairness as the test for a due process violation, and (4) in finding plaintiffs had not met their burden of proof on their due process claim.

The alleged errors interrelate, as demonstrated by plaintiffs' argument, which proceeds in three steps. First, plaintiffs claim that under Neb. Rev. Stat. § 48-816 (Reissue 1988), the City had a duty to bargain collectively prior to making a unilateral change in the terms and conditions of plaintiffs' employment. Second, plaintiffs claim that the City breached its duty by failing to bargain prior to issuing order No. 33-91. Third, plaintiffs contend that the City's breach deprived them of property without due process of law.

We begin with the first step in plaintiffs' argument—their contention that the City had a mandatory duty to bargain collectively prior to making a unilateral change in the terms and conditions of their employment. Plaintiffs argue that this duty can be found in Nebraska's statutes and further argue that Nebraska's statutory scheme "mirror[s] the federal scheme." Brief for appellants at 28. It is important to note that plaintiffs rely entirely upon the duty to bargain as it may exist under Nebraska law; plaintiffs have relied upon federal law only to illuminate our understanding of Nebraska law. Plaintiffs'

argument necessitates an examination and comparison of federal and Nebraska law.

The federal scheme referred to is the National Labor Relations Act (NLRA). The NLRA makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5) (1988). The NLRA defines "to bargain collectively" as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment." § 158(d). The U.S. Supreme Court has held that these provisions, read together, establish an employer's duty to bargain in good faith. See, *First National Maintenance Corp. v. NLRB*, 452 U.S. 666, 101 S. Ct. 2573, 69 L. Ed. 2d 318 (1981); *Fibreboard Corp. v. Labor Board*, 379 U.S. 203, 85 S. Ct. 398, 13 L. Ed. 2d 233 (1964); *Labor Board v. Borg-Warner Corp.*, 356 U.S. 342, 78 S. Ct. 718, 2 L. Ed. 2d 823 (1958); *Labor Board v. American Ins. Co.*, 343 U.S. 395, 72 S. Ct. 824, 96 L. Ed. 2d 1027 (1952). The employer's duty to bargain extends only to subjects of mandatory bargaining: wages, hours, and other terms and conditions of employment. *First National Maintenance Corp, supra*; *Fibreboard Corp., supra*; *Borg-Warner Corp., supra*; *American Ins. Co., supra*.

Plaintiffs contend that Nebraska law also imposes on employers a duty to bargain. According to plaintiffs, the employers' duty to bargain can be found in § 48-816(1), (4), and (5).

Section 48-816(1) provides in relevant part:

> After a petition has been filed under section 48-811, the clerk shall immediately notify the commission which shall promptly take such preliminary proceedings as may be necessary to ensure a prompt hearing and speedy adjudication of the industrial dispute. . . . The commission shall require good faith bargaining concerning the terms and conditions of employment of its employees by any employer. . . . To bargain in good faith shall mean the performance of the mutual obligation of the employer and the labor organization to meet at

> reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment . . . .

A petition filed "under section 48-811" is one which invokes the jurisdiction of the Commission of Industrial Relations to settle industrial disputes between employers and employees. See Neb. Rev. Stat. § 48-811 (Reissue 1988).

Section 48-816(4) provides in relevant part:

> When an employee organization has been certified as an exclusive collective-bargaining agent . . . the appropriate public employer shall be and is hereby authorized to negotiate collectively with such employee organization in the settlement of grievances arising under the terms and conditions of employment of the public employees . . . and to negotiate and enter into written agreements with such employee organizations in determining such terms and conditions of employment, including wages and hours.

Section 48-816(5) provides in relevant part:

> Upon receipt by an employer of a request from a labor organization to bargain on behalf of employees, the duty to engage in good faith bargaining shall arise if the labor organization has been certified by the commission or recognized by the employer as the exclusive bargaining representative for the employees in that bargaining unit.

Statutory interpretation is a matter of law, in connection with which an appellate court has the obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Abdullah v. Nebraska Dept. of Corr. Servs., ante* p. 545, 513 N.W.2d 877 (1994); *In re Application of Jantzen, ante* p. 81, 511 N.W.2d 504 (1994). In the absence of an indication to the contrary, statutory language is to be given its plain and ordinary meaning. *Abdullah, supra*; *State v. Flye, ante* p. 495, 513 N.W.2d 526 (1994).

Two of the Nebraska statutory provisions upon which plaintiffs have relied do impose a duty to bargain, but only after specific events have occurred. Section 48-816(1) states the commission shall require good faith bargaining, but only after a petition has been filed invoking the jurisdiction of the commission. In the present action, there is no evidence that

such a petition was filed. Section 48-816(5) requires good faith bargaining, but only after the employer receives a request to bargain from the union. In the present action, there is no evidence that the employer received a request to bargain from the union.

The third statutory section cited by plaintiffs does not require good faith bargaining at all. Section 48-816(4) simply *authorizes* public employers to negotiate with unions regarding the settlement of grievances and the establishment of written agreements as to wages, hours, and other conditions of employment. Without this statutory authorization, a public employer would not have the right to bargain with public employees. See *University Police Officers Union v. University of Nebraska*, 203 Neb. 4, 277 N.W.2d 529 (1979).

Plaintiffs' contention of a mandatory duty to bargain is founded on the premise that the federal scheme mirrors the Nebraska scheme. Having examined both schemes, we reject plaintiffs' premise. Although federal court decisions under the NLRA are helpful where similar provisions exist in the Nebraska statutes, the federal decisions are of no help or benefit where similar provisions do not exist under Nebraska statutes. *University Police Officers Union, supra.* The Nebraska statutory provisions, unlike the NLRA, do not establish a duty to bargain.

We conclude that under Nebraska law and on the facts presented in the record, the City had no mandatory duty to bargain. Because we have determined that the City had no duty to bargain, we need not decide the issues of breach and due process.

The district court correctly determined that plaintiffs had failed to prove a due process violation. Accordingly, the district court's judgment dismissing plaintiffs' petition is affirmed.

AFFIRMED.